Good afternoon, Your Honors. Dominic Messija on behalf of the appellant who was the defendant below Dollar Tree Stores, Inc. I'd like to reserve about three minutes for rebuttal if I can. Certainly, but keep track of your own time. I will do that. Thank you, Your Honor. This is a case where the respondent, who was the plaintiff below, engaged in a game of jurisdictional cat-and-mouse, taking inconsistent positions to the district court. I don't read the record as so much the defendant or the plaintiff taking inconsistent positions, because I think when he went back to the district court, he did argue for the class that he described to Judge Real the first time up, which is 33 percent of the people, but the trial judge said, That's not the classes I read. It's closer to 60-something, and that would push you over the jurisdictional amount. So I'm not sure there's a fault on behalf of the defendant or plaintiff, but does it matter? I think where the inconsistent statement comes in is on the remand motion on the second removal, and that's where the plaintiff says, This broad class, this is what we pled all along. Right. Well, it's technically true. The description of the class in the complaint never changes, the amended complaint. The question is how much of that class was likely affected by the alleged conduct, and when you go up the first time, you say it's 60-something percent, and he says it's 33 percent or some number like that, and Judge Real says, I don't see any evidence that it's that big, and therefore it's 33, and it's not big enough to get me to the 5 million limit. You don't appeal that, right? The first remand is not appealed. Not appealed. So we then go back into the trial judge, and he seeks to certify the class. Mr. Reyes of 30, you know, he doesn't say, I want a bigger class. He says, I want a class, and I think it's what I told Judge Real, and the trial judge says, That's not why I read the complaint. I'll certify your class, but it's twice as big, and it goes over the jurisdictional limit this time. So without regard to bad intent or anything else, why doesn't that second order by the superior court constitute a new event in this case that entitles you to file a removal order? The class certification order by the superior court, we do contend, is the triggering event. And it doesn't matter whether that order resulted from bad conduct by the plaintiff or good conduct. There's got to be a class certification order that you can remove. So tell me why that order is removable when the first one was not. That order is removable because it encompasses what we call the broad class. It's the all-inclusive class, all assistant store managers, all through the state of California, all through the relevant time period. Is there any doubt in this case that that class, I don't think your opponent disputes this, but I want to be sure, that that broader class, as you call it, would satisfy the minimum amount of controversy? I don't think there's any question, and I think the record is clear on that. You put in evidence, and there's sort of a mild shot at your evidence in the briefing, but that's not why you were turned down at the district court level, right? We were turned down at the district court level because Judge Real found that our second removal was untimely. Right, because he said it's the same complaint that you removed the first time. Exactly, and that seemed to not give due attention to the intervening pleadings in which the plaintiff expressly narrowed that broad class in the complaint to just the 33 percent, just the narrow class of solo assistant managers. In order for you to have a timely removal, something has to happen after the first removal, a change in circumstances, because you didn't appeal the first one to allow the second one. So what was the event? It was the class certification order that was issued May 15th of 2014, and that's the first time after the initial removal in which we were on notice that it was the broad class that was in play and not the narrow class. Here's my difficulty, and I'm sorry to keep running you around on this. You thought it was the broad class the first time up, right? We did, and we stood corrected. And the other side said, no, no, it's the narrow class, and the judge believed them. Should you, and then you get back and you find out that you've been right all along, it's the broader class. Why shouldn't you have appealed the first remand order and say, Judge, that's a mistake, it's the broader class? The plaintiff does have the ability to define the class the way they want to define the class. They're the master of their pleading, and for the sake of clarity, I think it's worth spending a very brief moment to discuss the allegations in that operative first amended complaint. That was the operative complaint at the time of the first removal, and it remained the operative complaint throughout up to the present day. That operative complaint has two components, really, that are relevant to this discussion. The first component is at paragraph 14, and that's the component that gives this broad class definition where it says everybody in California for the entire relevant time period. The argument that plaintiff made and that plaintiff bound himself to upon that first remand motion in the district court was that paragraph 14 of that first amended complaint is informed, it's defined, it's limited by paragraph 28. Paragraph 28 of the first amended complaint is the one that says, people who are impacted by our claim are only those people who worked alone, the solo shifts, the solo assistant store managers. And to support which portion, which fraction of the broad class that solo narrow class consisted of, the plaintiff at that first remand motion submitted a sworn declaration from the named plaintiff, Mr. Reyes. And the sworn declaration said, these solo shifts, these individuals in the narrow class comprise approximately 33% of the broad class. So at that point, the class has been either, depending on your point of view, either clarified in definition or constricted. For our purposes, it didn't really matter which one because that was the class definition going forward, and our assumption was, and I think correctly so, that the plaintiff was going to be bound to litigate that narrow class. That's a good thing for you. You'd like a smaller class than a larger one. As long as we know what we're dealing with. No reason for you to fight the plaintiff saying, I'm not looking for as much money as you think I am. We can't redefine their class definition for them. No, I'm just saying, I'm trying to say that it might be a good idea not to appeal when the plaintiff comes in and says, I'm seeking less money than you think I'm seeking. It's better to be in federal court where the court may be less sympathetic to the plaintiff. But in any event, the plaintiff said to you, I'm not suing as many people as you think I am. I'm suing on behalf of as many people. I've got this declaration. Right, and it bears mentioning that this was a tactical, strategic decision. This wasn't something that was arbitrary by the plaintiff. Because he didn't want to be in federal court. Well, maybe or maybe not, and obviously by the two remand motions we can assume he did not want to be there. I think that's fair. But I think the real reason for it was borne out in the class certification briefing about a year down the line. And the reason – Let me ask you a different question. It doesn't seem to me that after the plaintiff amended his complaint the first time that the complaint ever changed. Would you agree? The first amended complaint stayed as it was throughout the litigation. That's correct, Your Honor. Okay, so if the first amended complaint stayed as it was throughout the rest of the litigation, why did the federal court make a bad determination in saying it could have been first ascertained the case was removable or it wasn't? I mean, all we got in this particular case is counsel not changing his complaint at all but making different arguments at different times. And then the good district judge says, hey, this complaint didn't change at all. It could have been ascertained. Counsel just didn't make that argument. So that's one of the prongs I got to look at. Send it back. And I guess I have a tough time understanding if he doesn't change the complaint at all, all he does is change his arguments, why it is that I now will say, well, good district judge, you've made it wrong. I think that's an excellent question, Your Honor, and I think there are two ways to address that. The first way is, as I was indicating to Judge Hurwitz a little bit earlier, the complaint is somewhat ambiguous because of the interplay of these two paragraphs. Well, I understand the ambiguity, but I also understand the prongs upon which the district court can make its determination. Just because one pleads an ambiguous case, one makes an argument, and then sends it back, and then the guy changes his argument, doesn't seem to me then that the district court is wrong by saying, this could have been ascertained the first time. So the additional set of facts that plays into that inquiry is the course of conduct in between that first removal and the second removal. And what we had in the state court in that intervening time period is that the plaintiff and the defense, for that matter, consistently litigated this narrow class. It was the class that plaintiffs sought to certify in the class certification motion in state court. That narrow class appears in paragraph two of the notice of motion of class certification in state court is expressly brought on behalf of a narrow class. That notice of motion is never amended or changed up to the present day, certainly not through the time that a decision was issued. But the superior court judge in the hearing says, that's not the class I'm going to certify. I'm going to certify the class described in the complaint, not described in your limitations plaintiff's counsel, and that's a class that we all for present purposes assume meets the CAFO requirements. The question is why, for the district judge who gets the case back and says, you're here with the same complaint you had before. What have you got new? Andy says, based on one of the two prongs by which he can say, I don't need it. You could have ascertained this when it came up the first time. It's not any different. And I looked all over to find a case that said, just because counsel changes his argument and makes a different argument based on the same complaint, that that makes it such that the district court can't say, it's the same deal. You could have looked at it and found the same thing. You couldn't find such a case. And we did, in fact, remove that first time around, and we were told your interpretation. But honestly, the court said, based on the interpretation the plaintiff now gives to his own complaint, this is the way it is. Nobody was arguing differently, and he said, send it back. And now he's saying, you could have argued that before, but you didn't. So I don't need to look at it. And that's why I asked the question before. I understand why somebody wouldn't argue that he was subject to more liability rather than less, but Judge Reinhart suggests that maybe people like federal court so much, they'd be willing to suffer greater damages. My worry about that, the second question is, do I owe any deference to Judge Mead? Do you owe deference to Judge Reel? Yeah. I think it's clear that this court looks at that remand order under de novo review, and it looks at the entire order. To address Judge Hurwitz's question, there was a technical reason for this limitation. It wasn't just I want to seek less, and I think it was not simply. No, I understand the tactics on both sides. My concern is this, and I think you've answered it. If you thought that the complaint really encompassed a bigger class than the one Judge Reel agreed with the plaintiff that it encompassed, you could have appealed, and you could have come up to us and said, look, on the face of this complaint, it's much bigger. You can't come to federal court and say, yeah, it's not that big. Now, I think your answer to that is, yes, you can, because you can limit. You're the master of your own complaint. But that's what I'm struggling with, whether you should have come up the first time and said, this complaint on its face describes a very broad class, and it meets the requirements, and the judge made a mistake, or whether you got to wait until the state court told you that. Well, and I guess that's my argument comes in as kind of a complement with that argument, and that's why I wanted you to really look at it. It really seems like that by not doing anything the first time, by having the same complaint all the way through, that what Judge Meehl said about it's the same complaint, you could have done it before, really makes something that I can't say is wrong. We're not contesting that the narrowed class definition, at least for our purposes here today, was not removable. It was one-third of the size, per the plaintiff's definition, of the broad class. We calculated initially the broad class put slightly over $5 million in controversy. Yeah, nobody's arguing the narrower class was removable. At least you're not arguing that, and it seems to me it's hard to argue based on multiplication. I'm not arguing the narrower class was removable. I think we were bound at that point by the district court's decision that the narrow class was in play based on the plaintiff's attempt to define something that did not have an ascertainability problem. Plaintiff's concern with the broader class definition, and they made that clear at oral argument, was that they narrowed the scope of the class in order to make the class ascertainable. Unfortunately, the state court disagreed with that contention and said, no, it's actually backwards. Your narrowed class is not ascertainable. In your view, is what the state court did the functional equivalent of amending the complaint that was in front of Judge Real? In other words, the complaint that was in front of Judge Real the first time, as defined by the plaintiff, was a small class. The state court said, that's not the way I read the complaint. The complaint is a bigger class. What effect does that have for purposes of removal? There's no question that the state court redefined the class that the plaintiff was seeking to certify, and that was made clear by the court at oral argument in its certification order. I don't think that's disputed. We all agree the state court certified a broader class than the plaintiff was seeking to certify. What's the consequence of that for the question that Judge Smith and I are asking? Is there any? Well, in what case do I look at to make that determination? Because my worry is that looking directly at what the D.J. did in this particular matter, the same complaint, not a bit of difference, never appealed. He just looked at the same complaint and sent it back, and a D.J. in the state court says it's bigger. There was no amendment. There was nothing. All we have is a complaint, which is read more broadly. And then Judge Meal says, real, sorry, I always say Meal, real, says, oh, same thing. Could have been thought of the first time. I don't have to do it. Do you want to think that over for the rebuttal you don't have, and we'll give you time, a little time to answer that question? I would be happy to do that or give a concise response now if I might while it's fresh. If you want to do it now and not have rebuttal, that's fine. I would like to reserve rebuttal if I may. Good afternoon, Your Honors. May it please the Court, Kenneth Yun for Plaintiff Appellee Richard Reyes. I think rather than going into what I would prepare to say, I would like to address the one point, which is the 60.2%, 65% from the first remand order. I think one of the things that was very important in that original remand order is what the court said at the oral argument hearing at ER 143. You're talking about Judge Reel? Judge Reel looking at the facts. The statement he says, or the court says, is, for example, the hypothesis that 62.2% of all assistant manager shifts were worked alone is unsupported. I think the standard of review is... I have no problem with Judge Reel's decision. Here's the problem that I have. I hate to talk about fairness because we're in federal court, but I'm trying to think about it here. You go up to Judge Reel the first time and you say... Just a small class, Judge. Modest little class. We're not at 5 million. And the defendant says, that's terrific. I thought it was a bigger class. I'm happy not to be sued for 5 million. But you go back to state court, and to be fair, you take the same position. And the state judge says, no, it's a bigger class. You're more at risk, defendant.  And you were the one who said the complaint only involved 30% or 28% or whatever number of the class. So isn't it really unfair to say to them, gee, you blew your chance the first time by... Because you're the one who led the judge the first time to define the class so narrowly. If you this first time had gone up and said, yes, you're right, Judge, we're seeking a broader class, it would have been removed. You said, no, it's not a broader class. Went back to state court, it became a broader class. Why isn't that a new event? Well, in terms of fairness, the question posed is first about fairness. First, the reason there's no unfairness is because the defendant at the first opportunity could have provided to Judge Reel evidence of 60.2%. Yeah, but the problem was you said, I don't care what evidence he's got. That's not the size of the class that we're talking about. We read this complaint as being limited to this group of people. And so that was your argument. It's limited to this group of people. The state judge said, oh, no, it's a broader group because the complaint describes a broader group. I think that's an incorrect recitation of the facts. I think that the dispute between the 65 or later amended to 60.2% was for the narrow class. The defendant tried to argue that it's 60.2% under the plaintiff's theory. And the plaintiff, which I think to be fair to the plaintiff, he's a single individual, and Judge Reel recognized that he's a single individual in a single store, giving the evidence he can provide without having had discovery. Later in the case, we had significant discovery. But at that point, early in the case, pre-discovery, that was the plaintiff's best estimate. Didn't you, in front of Judge Reel, say the class is limited to people who worked alone? No. I said that the claims are, the theory of the claim is based upon that. Okay. Fair enough. Fair enough. I think that's an important fact. Now, weren't we seeking recovery on behalf of people who worked alone? Well, that's the theory of the claim. Okay. And then we went back to state court, and the state judge said, no, no, I'm going to certify a class of people, not just the class of people who worked alone, but other people too. Right? No. The judge at the state court level said, I'm going to certify the same class that's been in the complaint ever since the beginning. I know. For the theories that I believe warrant certification. Describe it as a theory or a fact. Tell me where I'm wrong. Didn't the state judge certify a class made up of more people than you told the federal judge would be in the class? More people? No. Yeah. More defendants. More plaintiffs. More putative class members. Same people. More putative class members. Yes or no? Same class members. So it's the same 28% that you described to? Bigger amount, right? More people? Bigger amount of perhaps damage. That's the question. Does it equal or meet the $5 million threshold? Well, I think, again, the thing to go back to. I mean, if we get past the fact whether it's timely or not, and we're going to was the removal proper, have you ever argued that this class does not meet the $5 million threshold? I have argued that, yes. Where? At the first remand. No, no. I'm talking right here in the district court below or in this court. Do you agree that the class is now defined has $5 million in controversy? I think the class as it currently is, based upon the certification order from the state court, provides over $5 million. Okay. We don't disagree about that. And the reason it provides more amount in controversy than the first time is not that the dollar claims of the people that you represented to the judge were in the class the first time have gotten bigger, but that rather there are more people in the class for whom you were seeking recovery, right? No, I think that's actually the opposite, Your Honor. Tell me why. The class has always been those non-exempt assistant managers who work over three and a half hours. Right. And the first time through, you said to the judge, the class we're really seeking recovery for are the ones who have nobody who works with them, right? I think the way that the complaint is drafted, the part which— No, no. Look, let's not play games with each other. I know the complaint never changed. I know the complaint on its face describes a broader class. I'm asking a factual question. You're not waiving any of your legal arguments by not answering it. When you went to Judge Rial the first time and said, I want a remand, they said, look at this class. It's got all these people in it, and it's over 5 million. You said, no, no, it's not that many people. We're not seeking recovery for that many people. We're seeking recovery for a smaller swath of people. Let me explain the fact then. This is, I think, the part that might confuse those who don't know the industry. So a manager will at some point work a shift by themselves, but they will also work shifts with coverage. Fair enough. So the description is we're seeking recovery for managers who worked by themselves. Which would be all managers eventually. Fair enough. And we think that only covers about 30 percent of the time that managers spent. And then when you got back to state court, the judge said, no, no, you're seeking recovery for time spent with other people too. Maybe the same managers, but it's other people too. Fair? Yes, fair. Okay. So it's a bigger claim than the one that you represented to Judge Rial that you had. Fair? Yes. More damages. More damages. Though Judge Rial did not rely upon that. And more circumstances that would be damaged, would be able to get damaged. Give rise to liability. But not more people. Well, it may be more people because there may be some people who always worked with two. Certainly the people have increased because the first remand order was years before the second remand order. Right. Okay. Okay. So without regard to how we got there, we got to a situation where you had a claim that was less than $5 million the first time you went to see Judge Rial. And the second time you went to see him, it was more than $5 million. Why shouldn't that claim be removable? And I'm sorry if we got bogged down into facts along the way. Wasn't that a fundamental change in the nature of this lawsuit? Even if the pleadings weren't changed? I don't think it qualifies under 1446B1 or B3 or CAFA diversity jurisdiction in general because there's no trigger there.  Well, that's one of the issues that was raised to the district court, raised in our papers, is that the order is no more a trigger than the tentative order before that in terms of the timing issue. Well, but let me just tell you, on the tentative order, I have trouble. If a judge says, if I tell you today I'm thinking of ruling against you but make your best argument, I don't think that's when legal action occurs.  So let's assume that the tentative order argument doesn't work for you. Why isn't the final order the new event that triggers the ability to remove? Well, obviously the first amended complaint has remained the same. I agree. And that was 2012, much, much prior to any of the... No, and we've gone through the history, so I'm asking the question in light of the history. I know the complaint never changed. I know you represented to Judge Rial that the amount you were seeking was less than $5 million because of a narrow definition of your claim. I know the state court thought you made a broader claim. I know it issued an order. The question is, why doesn't that second order trigger the time to remove? What case or what is the precept that would suggest that shouldn't be a change? Change your theory or the district court changed it for you. Why isn't that enough, even though the complaint did not change? Which is the direct opposite of what we asked, Kim. Yes. We all agree on the facts, so that's why we shouldn't fight about them. We're fighting about the law. With respect to that alone and discounting the prior events, which I would also argue that the oral argument, without reading from it unless it would be helpful, the oral argument the court plainly explained this entire concept about what she's going to be certifying or what the state court will be certifying. Right. I understand that you want to go backwards and say that the removal order should have occurred right after oral argument. But I'm asking you to assume that you don't win on that argument. And if we don't win on the First Amendment complaint, then those are the prior events. No, no. It's not the First Amendment complaint. It's not her tentative ruling. We're focusing on the certification order in state court.  And let me just ask you the question in this context. If at the time the judge had said, gee, I'm going to consider the complaint amended to encompass this broader set of claims, and I'll certify that broader set of claims, would there be removability at that point? Unless there was a prior event. Well, I think there's two elements for that. First, it has to be removable based upon event, and that has to be the first event. Well, no, but the first event doesn't matter. Let's assume we're all holding hands. It's not removable at the first event because you say to the judge, my claim isn't 5 million because no matter what the complaint says, the only folks I'm seeking relief for, the only hours I'm seeking relief for are hours worth of time. That would bring me to my main point, then, Your Honors, is that this circuit should affirm the district court's remand as untimely on top of the reasons we've already discussed because the defendant, Dollar Tree, was on notice under 1446B3, which was triggered on April 8, 2014, with the reply brief, which simply clearly stated the shifts that issue it, 969,000, based upon the theory at that moment, which multiplied by minimum wage is well over 5 million. This was a footnote in your reply brief. That's correct. And from that footnote, they were on notice. It's as clear as day, especially to labor lawyers. And in prior pleadings, we had identified the rate of pay is between $10 and $12 an hour, depending on the year. That is from that moment, that's when the trigger would be. And if they had remanded. Does that rate of pay apply to the narrow class or the broader class? It applies to every employee. No, no, that's not the question I'm asking. Is it if you multiply that number times the narrow class that you represented to Judge Real was the class for which you were seeking recovery, does that number get you over 5 million? If you take the number of shifts in class members as the time of the first removal, multiplied by a third, multiplied by the rates of pay, then you'd still have the under 5. Right. So if they thought at this time, as the rest of your brief said, that you were still only seeking certification of the narrower class, I don't see if that footnote gets you over 5 million. Well, Your Honor, the footnote says, plaintiff at R145, plaintiff believes that pursuant to Brinker, all 969,000 shifts would be eligible for a rest break premium. I think that's very clear. So they're supposed to take from that that you've now abandoned your theory of the case and changed it completely to cover more people. I think they should take from that that the court may certify that and grant a decision favoring plaintiffs for $7.752 million, which is over $5 million. May I ask you one question? Are changes in circumstances as this case goes along always sufficient to either remove or remand? No. I think that based upon the Roth case that, as they said at the last page of the decision, such documents, such as the one I just mentioned, or arguably any document that triggers the removal that is over $5 million, such as our reply brief in favor of certification at the state court level, such a document will trigger the 30-day removal period during which the defendant must either file a notice of removal or lose their rights. So you're arguing that your reply brief was a change in circumstance then? It's a brief, yes. It's a pleading. For instance, if your class wasn't large enough when the case was filed and then they hire more and more employees. Yes, that's always a risk. And it applies, the complaint applies to all employees, not only those hired as of the date the complaint was filed. At some point, Your Honor, this class must end for purposes of ascertainability to make sure you have the people before you go to trial. But yes, generally speaking, until certification is granted, certainly the class is expanding. Let me ask you a question I tried to ask before in a slightly different way. Let's assume your original complaint described precisely the class that you described to Judge Real. Okay? Not the words in the complaint. You went to Judge Real and you said, they interpret this as including this many shifts, but we interpret it as including this many shifts, and I'll amend my complaint right now to say that. And your complaint said that. And then you went back to State court and amended the complaint to make it include more shifts. Would that be a change in circumstance that made this case removable? I think it very much depends upon how it's done. Because I think this is the U.S. Supreme Court. The issue with hypotheticals is that I get to make them up. It's done exactly the way I described. Your original complaint corresponds to your theory before Judge Real with particularity. You then go back to State court and amend the complaint to correspond with the theory that the Superior Court judge has of the size of the class. Is that amendment a trigger for removal? I don't think I quite understand the hypothetical, to be honest. I would say that if... But what if instead of the judge certifying the broader class, you'd amended your complaint to make clear that this was the broader class you were seeking? Would that have triggered the ability on the other side to remove? I don't think so, actually, no. Why not? Well, because I think unless the complaint is determinate, then there's the separate issue. An indeterminate complaint doesn't trigger. But I thought your complaint was determinate the first time and the second time. The error is interpreted. The defendant had to introduce their own evidence, which the district court found completely with no probative value, of 60.2% of the shifts at issue to reach over $5 million. Without that, the complaint didn't have any damages numbers in it. And we're going around. So one reason the judge found it to have no probative value is you said, I'm not seeking recovery for that many of the shifts. I'm only seeking recovery for 30% of the shifts because I'm only seeking recovery for shifts where people, where the manager worked alone. That's what you said to the judge. The defendant identified, according to their number, which they pulled according to the court, district court level, which is entitled to deference. It's a factual determination, though it's not appealed, that that number, 60.2%, was for, it's this corresponding defendant's calculation of plaintiff's number. So plaintiff said it was 33% for people by themselves. Defendant said it was 60.2% for people by themselves. Okay, so they failed to prove the first time through that people by themselves got to the jurisdictional amount. You then went back, and now you're making claims in addition to people by, same people, I understand, people by themselves, for people with other people, right? So I don't understand how their estimate that people by themselves was bigger than you thought it was, binds them the second time with respect to how big the claim is for people with other people. Sound like Barbara Streisand to me. Well, I think one of the issues that I think the court, the practicalities of it, is that the defendant doesn't want to identify all the theories that a plaintiff could sue them for at the removal paper. The defendant could have identified a different theory that was in the complaint, per the state court judge's certification order, that there was another theory for rest breaks. The defendant could have identified that theory, added up the rest breaks. You disclaimed that theory. No, we had claimed a theory. They could have said, your complaint also covers other theories because your complaint doesn't limit the theories. I got you. It just says, so here, let me give another theory that the plaintiffs could sue me on. But most defendants are incredibly hostile to identifying additional theories a plaintiff can sue them on in their removal papers, so they don't disclose those. Well, I think one would understand that, wouldn't they? It's perfectly reasonable. But it does have consequences, though the court, as it currently holds the removal time frames, which we would believe should be different. We believe that the 30-day triggers under B1 and B3 should be the only restrictive removal requirement basis. But based upon Roth, the defendant can bring their removal when they like. That's not an issue in this case because the defendant has decided to focus their entire appeal on the certification order in the state court. Thank you, Your Honor. Thank you, Your Honor. I appreciate the court giving me a little bit of extra time on rebuttal. I'm going to do my best to address the question that was posed most recently. A little bit means two minutes. Thank you, Your Honor. The reason why we could not have successfully removed and, in fact, did not successfully remove based on the first amended complaint initially, and the reason why when we removed the second time we were under new and different facts and circumstances than we were in the first removal was because our interpretation of the complaint was contradicted directly by the court at the plaintiff's invitation below. Our reading of the class definition as including all shifts was disclaimed by the plaintiff. The plaintiff said, No, I'm only seeking one-third of the shifts. The court said, That's what the complaint says. That's what the plaintiff says. That's what we're going to litigate. The certification order issued by the state court in May of 2014 is expressly covered by 1446B3 as an order that can trigger certification, and that was a new and different circumstance. Order that can trigger? I'm sorry, removal. Thank you. I was going to say not certification. We don't want that. We just want removal. You got that. We still don't want it. I know, but you still got it. It's an order that can trigger removal expressly under that statute. We did not find any cases from this jurisdiction directly addressing the class certification order triggering removal. We did find a case from the district court in New Jersey that we cited for the court, which is the Beagle v. Park West Gallery case. I think it is analogous to situations this court has addressed in Babasa v. Lenscrafters, for example, where telephone calls from opposing counsel regarding expansion of what they seek can form the basis of a removal trigger under 1446B3. When you say removal trigger, you're suggesting it is a proper removal then. I'm not talking about timely removal. I'm talking about proper removal. It is a proper removal. Which is, in my book, quite a different story. In our estimation, it's a proper and a timely removal because it does set forth all of the elements of the CAFA. As this court noted, the only element that's disputed is the timeliness element. Speaking quickly to the reply brief... You're over your two minutes, so we'll give you 30 seconds more. That's it. Thank you, Your Honor. Just to address quickly the idea that the reply brief triggered removal, the footnote in the reply brief, and it is a footnote, it's footnote 14 buried at the end of the document, says essentially, and I'll read it verbatim... No, we've read it. Okay. A plaintiff believes these people might be entitled to recovery. Well, that's all well and good, and that's not who the plaintiff sought to certify. That same document in two other places says we expressly limit this to the solo managers. The motion for class certification in four places says we expressly limit it to solo managers. The notice of motion says that. Thank you, Your Honor. I appreciate the time. This argument will be submitted. The court will stand in recess.
judges: Reinhardt, Smith, Hurwitz